**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | |
|---|---|
| In re: | CASE NO: 19-70280-SCS |
| BARNETT EZEKIEL REEVES, III, | CHAPTER 13 |
| Address:    1019 KELTIC CIR<br>CHESAPEAKE, VA 23323-2738 | |
| DEBTOR(S). | |
| MTGLQ INVESTORS, LP<br>PLAINTIFF, | |
| v. | |
| BARNETT EZEKIEL REEVES, III,<br>DEBTOR(S) | |
| R. CLINTON STACKHOUSE JR.,<br>TRUSTEE | |
| DEFENDANTS. | |

<u>**NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY
11 U.S.C. §362**</u>

MTGLQ Investors, LP, a creditor in this case, has filed papers with the court to obtain relief from the automatic stay of the Bankruptcy Code with regard to certain property more particularly described in those papers which are attached.

<u>**Your rights may be affected.**</u> **You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the Court to grant this creditor relief from the provisions of the automatic stay of the Bankruptcy Code, or if you want the Court to consider your views on the Motion for Relief from the automatic stay, then on or before **October 29, 2019**, you or your attorney must:

M. Christine Maggard, VSB# 33824
Brock & Scott, PLLC
8757 Red Oak Blvd., Suite 150
Charlotte, NC 28217
757-213-2959 x4538
christine.maggard@brockandscott.com
Attorney for MTGLQ Investors, LP

File with the Court, at the address shown below, a written response pursuant to Local Bankruptcy Rules 4001(a)-1(C) and 9013-1(H). If you mail your response to the Court for filing, you must mail it early enough so the Court will **receive** it on or before the date stated above.

> United States Bankruptcy Court
> U.S. Bankruptcy Court 600 Granby Street
> Room 400
> Norfolk, VA 23510

You must also mail a copy of any such response to:

> M. Christine Maggard, Esquire
> Brock & Scott, PLLC
> 8757 Red Oak Blvd., Suite 150
> Charlotte, NC 28217

**Attend the preliminary hearing that will be conducted in the Norfolk Division of the US Bankruptcy Court, U.S. Bankruptcy Court 600 Granby Street, Room 400, Norfolk, VA 23510 on November 7, 2019 at 9:30AM in Courtroom 1.**

If no timely response has been filed opposing the relief requested, the Court may grant the relief requested in the Motion from Relief from Stay.

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion for Relief from Automatic Stay and may enter an Order granting the relief.

**TO ALL DEFENDANTS:**

**Pursuant to Rule 4001(a)-1(C) of the Local Rules of the United States Bankruptcy Court of the Eastern District of Virginia, you have fourteen (14) days from October 15, 2019, the date of service of this Motion upon you, to file a written response thereto and you must file such response with the Clerk of the United States Bankruptcy Court, U.S. Bankruptcy Court 600 Granby Street, Room 400, Norfolk, VA 23510 and serve a copy of same upon the Plaintiff's attorney, M. Christine Maggard, at 8757 Red Oak Blvd., Suite 150, Charlotte, NC 28217.**

TO THE HONORABLE STEPHEN C. ST. JOHN:

Your Plaintiff, MTGLQ Investors, LP, respectfully represents as follows:

1. That this is a core proceeding within the meaning of the Bankruptcy Code and Rules.

2. That on January 24, 2019, the above-named Debtors filed a Petition in this Court.

3. That R. Clinton Stackhouse Jr. was appointed Trustee of the property, has qualified and is now acting.

4. That at the time of the filing of the Debtor's petition herein, the Debtor had an ownership interest in certain real property and improvements having a street address of 1019 Keltic Circle, Chesapeake, VA 23323, located in the City of Chesapeake, Virginia, and more particularly described as follows:

Lot 45, CAMELOT, SECTION 9 – PHASE II, as the same is duly dedicated, platted and recorded in Map Book 142, at Pages 4, 4A and 4B among the Land Records of the City of Chesapeake, Virginia.

5. That the Plaintiff is the holder of a Note dated January 23, 2004, in the original principal amount of $168,000.00 with interest thereon from said date at the rate of 8.04% per annum, secured by a Deed of Trust on said real property and improvements recorded in the Clerk's Office of the Circuit Court of the City of Chesapeake, Virginia, on which there is an approximate payoff balance of $223,780.56 as of September 11, 2019. True copies of the Note and Deed of Trust are attached hereto and incorporated by reference as Exhibits "A" and "B", respectively.

6. The Debtor has defaulted in the mortgage payments to be made outside of the plan. Upon information and belief, the amount of default, exclusive of fees and costs, is as follows:

| 6 | Payments @ (04/19 - 09/19) | $ | 1,446.27 | $ | 8,677.62 |
|---|---|---|---|---|---|
| | **Less Suspense** | | | **$** | **1,391.75** |
| | **Total Delinquency** | | | **$** | **7,285.87** |

7. In addition to other amounts due to the Movant reflected in this Motion, as of the date hereof, in connection with the seeking of the relief requested in this Motion, Movant has also incurred legal fees and costs in the amount of $1,031.00.

8. That in the event the Plaintiff is granted relief from stay hereunder, the Plaintiff, its agents and/or representatives, requests that the Order granting said relief allow the Plaintiff, its agents and/or representatives, to send communications, as necessary, to the Debtor, including, but not limited to, notices required by applicable state law in connection with applicable State Court foreclosure or other proceedings incident to the aforesaid real property and improvements including and proceedings necessary to recover possession of same from the Debtors.

9. That the facts hereinabove alleged constitute cause for a grant of stay relief in favor of the Plaintiff, pursuant to the provisions of 11 USC §362(d).

WHEREFORE, Plaintiff prays that it be granted relief from the provisions of the automatic stay of the Bankruptcy Code with regard to the above-described real property and improvements including any act necessary to recover possession of same from the Debtor, that the stay of such grant of relief imposed pursuant to the provisions of Rule 4001(a)(3) of the Bankruptcy Rules be waived and for any additional relief as the Court deems proper.

MTGLQ Investors, LP

By: /s/M. Christine Maggard
Of Counsel

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on <u>October 15, 2019</u>, a true copy of the foregoing NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY 11 U.S.C. §362 was submitted for electronic transmittal or mailed, first class, postage prepaid to:

Timothy V. Anderson
2492 North Landing Road, Suite 104
Virginia Beach, VA 23456
*Debtor Counsel*

R. Clinton Stackhouse Jr.
7021 Harbour View Boulevard
Suite 101
Suffolk, VA 23435
*Trustee*

Barnett Ezekiel Reeves, III
1019 Keltic Circle
Chesapeake, VA 23323-2738
*Debtor*

/s/ M. Christine Maggard
M. Christine Maggard, VSB# 33824
Brock & Scott, PLLC
8757 Red Oak Blvd., Suite 150
Charlotte, NC 28217

**Exhibit A**

# ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| JANUARY 23 | , 2004 | CHESAPEAKE | , VIRGINIA |
|---|---|---|---|
| [Date] | | [City] | [State] |

**1019 KELTIC CIRCLE, CHESAPEAKE, VIRGINIA 23323**

[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. **$168,000.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Intervale Mortgage Corporation**. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **8.04%**. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the **1ST** day of each month beginning on **MARCH 1, 2004**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **FEBRUARY 1, 2034**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **815 Reservoir Avenue, Cranston, Rhode Island 02910** or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. **$1,237.42**. This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the **1ST** day of **FEBRUARY, 2006** and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **SEVEN AND 79/100THS** percentage points (**7.79%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **11.04%** or less than **8.04%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **14.04%**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)  Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

**(A)  Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **FIFTEEN** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.0** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B)  Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)  No Waiver by Note Holder**

Even if, at a time I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor and waive the benefit of the homestead exemption as to the Property described in the Security Instrument (as defined below). "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
**BARNETT E REEVES III**                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

*Household Realty Corporation of Virginia*

*[Sign Original Only]*

Without Recourse
For valuable consideration
Decision One Mortgage Company, LLC
Assigns all rights, title and interest to

Decision One Mortgage Company, LLC

*Jim Fronczak*
LOAN PROCESSOR

PAY TO THE ORDER OF
DECISION ONE MORTGAGE COMPANY, LLC
WITHOUT RECOURSE
Interstate Mortgage Corporation
DECISION ONE MORTGAGE COMPANY, LLC
For Interstate Mortgage Corporation
William Baker
Asst. Secretary

Loan Number ▇▇▇▇▇▇▇

# FLOOR RATE RIDER TO NOTE

### (For 6-Month LIBOR, 2-Year LIBOR, and 3-Year LIBOR ARM Loan Program Disclosures)

THIS FLOOR RATE RIDER is made this **23RD** day of JANUARY, **2004**, and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note (the "Note") of the same date given by the undersigned (the "Borrower") to **Intervale Mortgage Corporation** (the "Lender") and covering the property described in the Security Instrument and located at:

**1019 KELTIC CIRCLE, CHESAPEAKE, VIRGINIA 23323**

[Property Address]

## AMENDMENT TO NOTE

1. Section 4.(D) of the Note is amended to read and be as follows:

**(D)  Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **11.04%** or less than **8.04%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.00%) from the rate of interest I have been paying for the preceding six months. My yearly interest rate will never be greater than a maximum rate of **14.04%**, or a minimum, or floor, rate of **8.04%**.

2. The disclosure appearing in bold type face on page 1. of the Note is amended to read and be as follows:

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE AND THE MINIMUM, OR FLOOR, RATE I MUST PAY.**

3. In the event that the Note is ever sold, assigned or transferred to the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation, this Floor Rate Rider and expressly its amended provisions with respect to establishing a minimum, or floor rate, shall thereupon terminate and shall be of no further force and effect. Any such termination of this Floor Rate Rider shall be effective as of the first Change Date to occur after the date of any such sale, assignment or transfer, and thereupon and thereafter the Note shall be in full force and effect in accordance with its original terms as set out in Section 4.(D) of the Note as if this Floor Rate Rider had never been incorporated into or amended the Note.

BY SIGNING BELOW, Borrower acknowledges and agrees to the terms contained in this Floor Rate Rider.

_____ (Seal)
**BARNETT E REEVES III**                                        -Borrower

_____ (Seal)
                                                                 -Borrower

_____ (Seal)
                                                                 -Borrower

## PREPAYMENT RIDER TO NOTE

THIS PREPAYMENT RIDER is made this _____**23RD**_____ day of _____**JANUARY**_____ ,**2004** , and  is incorporated into and shall be deemed to amend and supplement the Note of the same date given by the undersigned (the "Borrower") in favor of **Intervale Mortgage Corporation** (the "Lender").

### 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a partial prepayment without paying any prepayment charge. If I make a full prepayment within one (1) year of the date of this Note, I agree to pay a prepayment charge of 6% of the original principal amount of the loan; if I make a full prepayment more than one (1) year but within two (2) years of the date of this Note, I agree to pay a prepayment charge of 6% of the original principal amount of the loan. The Note Holder will use my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Prepayment Rider.

_____(Seal)
**BARNETT E REEVES III**                              -Borrower

_____(Seal)
                                                     -Borrower

_____(Seal)
                                                     -Borrower

**VIRGINIA PREPAYMENT RIDER - ADJUSTABLE RATE, FIRST MORTGAGE**

Exhibit B

BK 5 3 7 9 PG 6 8 4 8

Decision One Mortgage Company, LLC
Servicing Agent for Intervale Mortgage Corporation
6060 J.A. Jones Drive, Suite 800
Charlotte, North Carolina 28287

*return to:*
**Lenders Express Title & Escrow
2006 Old Greenbrier Rd #2
Chesapeake, VA 23320**

——————————— [Space Above This Line For Recording Data] ———————————

# DEED OF TRUST

The following information, as further defined below, is provided in accordance with Virginia law:

This Deed of Trust is given by **BARNETT E REEVES III**, as Borrower (trustor), to **C. GRICE McMULLAN, JR**, as Trustee, for the benefit of **Mortgage Electronic Registration Systems, Inc.**, as beneficiary.

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **JANUARY 23, 2004**, together with all Riders to this document.
**(B) "Borrower"** is **BARNETT E REEVES III.** Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is **Intervale Mortgage Corporation.** Lender is a **CORPORATION** organized and existing under the laws of **RHODE ISLAND.** Lender's address is **815 RESERVOIR AVENUE, CRANSTON, RHODE ISLAND 02910.**
**(D) "Trustee"** is **C. GRICE McMULLAN, JR.** Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered corporation whose principal office is located in Virginia. Trustee's address is **100 SHOCKOE SLIP, RICHMOND, VIRGINIA 23219.**
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel ▮▮▮▮▮▮
**(F) "Note"** means the promissory note signed by Borrower and dated **JANUARY 23, 2004.** The Note states that Borrower owes Lender **ONE HUNDRED SIXTY-EIGHT THOUSAND AND 00/100ths** Dollars (U.S.$168,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **FEBRUARY 1, 2034.**

DEED LABEL : HFSB43

REEVES III, BARNETT E
                    $168,000.00
Investor Name
Household Mortgage Serv

Status                    Sold
Title Received    06/28/2004

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

BK5379PG849

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
|---|---|---|
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ Other(s) [specify] Floor Rate Rider |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the _____CITY_____ of _____CHESAPEAKE_____:

          [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3047  1/01 *(page 2 of 13 pages)*

BK 5 3 7 9 PG 8 5 0

**SEE ATTACHED SCHEDULE "A"**

which currently has the address of  __1019 KELTIC CIRCLE__ _____

                                                            [Street]
__CHESAPEAKE_____, Virginia _____23323_____ ("Property Address"):
        [City/County]                           [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each

BK5379PG851

Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

BK 5379 PG 852

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

**VIRGINIA**-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3047  1/01  *(page 5 of 13 pages)*

BK 5 3 7 9 PG 8 5 3

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3047  1/01  *(page 6 of 13 pages)*

BK 5379 PG 854

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by

**VIRGINIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**     Form 3047  1/01  *(page 7 of 13 pages)*

BK 5 3 7 9 PG 8 5 5

Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

**VIRGINIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**      Form 3047  1/01 *(page 8 of 13 pages)*

BK5379PG856

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

**VIRGINIA**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**        Form 3047  1/01 *(page 9 of 13 pages)*

BK 5379 PG 857

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

**VIRGINIA**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**      Form 3047 1/01 *(page 10 of 13 pages)*

BK 5379 PG 858

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

BK 5 3 7 9 PG 8 5 9

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS.  Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender or Trustee shall give to Borrower, the owner of the Property, and all other persons, notice of sale as required by Applicable Law. Trustee shall give public notice of sale by advertising, in accordance with Applicable Law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with Applicable Law. Lender or its designee may purchase the Property at any sale.**

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3047  1/01  *(page 12 of 13 pages)*

BK 5 3 7 9 PG 8 6 0

Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to discharge the expenses of executing the trust, including a reasonable commission to Trustee; (b) to discharge all taxes, levies, and assessment, with costs and interest if these costs have priority over the lien of this Security Instrument, including the due pro rata thereof for the current year; (c) to discharge in the order of their priority, if any, the remaining debts and obligations secured by this Security Instrument, and any liens of record inferior to this Security Instrument under which sale is made, with lawful interest; and, (d) the residue of the proceeds shall be paid to Borrower or Borrower's assigns. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _Barnott E. Reeves III_____ (Seal)
                                         **BARNETT E REEVES III**              -Borrower

_____        _____ (Seal)
                                                                          -Borrower

_____(Seal)          _____ (Seal)
                        -Borrower                                         -Borrower

State of Virginia
~~County of~~ City of Chesapeake
    The foregoing instrument was acknowledged before me this JANUARY 23, 2004 by BARNETT E REEVES III .

My Commission Expires:
                                        _____
    _____            Notary Public

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3047  1/01 (page 13 of 13 pages)

BK 5 3 7 9 PG 8 6 1

## ADJUSTABLE RATE RIDER
### (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this **23RD** day of **JANUARY, 2004**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Note to **INTERVALE MORTGAGE CORPORATION** (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**1019 KELTIC CIRCLE, CHESAPEAKE, VIRGINIA 23323**

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

### A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of **8.04%**. The Note provides for changes in the interest rate and the monthly payments, as follows:

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the **1ST** day of **FEBRUARY, 2006**, and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **SEVEN AND 79/100THS** percentage points (**7.79%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

BK 5379 PG 862

**(D)  Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **11.04%** or less than **8.04%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **ONE** percentage point (**1%**) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **14.04%**.

**(E)  Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)  Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BK 5 3 7 9 PG 8 6 3

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
BARNETT E REEVES III                    -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

MULTISTATE ADJUSTABLE RATE RIDER (LIBOR Index)--Single Family--Freddie Mac UNIFORM INSTRUMENT   Form 3192 1/01   (page 3 of 3 pages)

BK5379PG864

## FLOOR RATE RIDER TO SECURITY INSTRUMENT

**(For 6-Month LIBOR, 2-Year LIBOR, and 3-Year LIBOR ARM Loan Program Disclosures)**

THIS FLOOR RATE RIDER is made this **23RD** day of **JANUARY, 2004**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to **Intervale Mortgage Corporation** (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**1019 KELTIC CIRCLE, CHESAPEAKE, VIRGINIA 23323**
[Property Address]

### AMENDMENT TO SECURITY INSTRUMENT

1. Section 4.(D) under Additional Covenant A. of the Adjustable Rate Rider to the Security Instrument is amended to read and be as follows:

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **11.04%** or less than **8.04%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.00%) from the rate of interest I have been paying for the preceding six months. My yearly interest rate will never be greater than a maximum rate of **14.04%**, or a minimum, or floor, rate of **8.04%**.

2. In the event that the Note is ever sold, assigned or transferred to the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation, this Floor Rate Rider and expressly its amended provisions with respect to establishing a minimum, or floor rate, shall thereupon terminate and shall be of no further force and effect. Any such termination of this Floor Rate Rider shall be effective as of the first Change Date to occur after the date of any such sale, assignment or transfer, and thereupon and thereafter the Note shall be in full force and effect in accordance with its original terms as set out in Section 4.(D) of the Note as if this Floor Rate Rider had never been incorporated into or amended the Adjustable Rate Rider to the Security Instrument.

BY SIGNING BELOW, Borrower acknowledges and agrees to the terms contained in this Floor Rate Rider.

_____ (Seal)
**BARNETT E REEVES III**                    -Borrower

_____ (Seal)
                                             -Borrower

_____ (Seal)
                                             -Borrower

BK 5379 PG 865

Lot 45, CAMELOT, SECTION 9 – PHASE II, as the same is duly dedicated, platted and recorded in Map Book 142, at Pages 4, 4A and 4B among the Land Records of the City of Chesapeake, Virginia.

RECORDED WITH
CERTIFICATE ANNEXED

2004 APR 16  AM 9: 20

58.1 802 TAXES PAID : _____
CHESAPEAKE, VA.

TESTE: Faye H. Pritchett

CLERK, CIRCUIT COURT

Assessor's/Tax ID No ▓▓▓▓
Recording Requested By:
HSBC MORTGAGE SERVICES

When Recorded Return To:

ASSIGNMENTS
HSBC MORTGAGE SERVICES
P.O. BOX 1422
BRANDON, FL 33509

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Chesapeake City, Virginia

Date of Assignment: June 5th, 2013
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR INTERVALE
MORTGAGE CORPORATION "ITS SUCCESSORS AND ASSIGNS" at P.O. BOX 2026, FLINT, MI 48501-2026
Assignee: HOUSEHOLD REALTY CORPORATION at 636 GRAND REGENCY BLVD., BRANDON, FL 33510

Executed By: BARNETT E REEVES III  To: MORTGAGE ELECTROINC REGISTRATION SYSTEMS, INC. AS
NOMINEE FOR INTERVALE MORTGAGE CORPORATION
  Trustee:  C GRICE MCMULLAN , JR Date of Deed of Trust: 01/23/2004 Recorded:  04/16/2004  in
Book/Reel/Liber: 5379 Page/Folio: 848 as Instrument No.: 028069  In Chesapeake City, State of Virginia.

Property Address: 1019 KELTIC CIRCLE, CHESAPEAKE, VA 23323

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of
Trust having an original principal sum of $168,000.00 with interest, secured thereby, with all moneys now owing or
that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the
covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee,
the Assignor's beneficial interest under the Deed of Trust.

    TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to
the terms contained in said Deed of Trust.  IN WITNESS WHEREOF, the assignor has executed these presents the
day and year first above written:
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR INTERVALE MORTGAGE
CORPORATION "ITS SUCCESSORS AND ASSIGNS"
On June 5th, 2013

By: _____
CHERYL A STANTON, Assistant Secretary

STATE OF Florida
COUNTY OF Hillsborough

On June 5th, 2013, before me, FLORETTE LAWSON, a Notary Public in and for Hillsborough in the State of Florida,
personally appeared CHERYL A STANTON, Assistant Secretary being duly sworn of MERS AS NOMINEE FOR
INTERVALE MORTGAGE CORPORATION ISAA, personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by
his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal,

_____
FLORETTE LAWSON
Notary Expires: 12/16/2016  #EE858826

(This area for notarial seal)

Prepared By:
Roy Mencia,  HSBC MORTGAGE SERVICES 636 GRAND REGENCY BLVD, BRANDON FL 33510

INSTRUMENT #130021602
RECORDED IN THE CLERK'S OFFICE OF
CHESAPEAKE ON
JUNE 25, 2013 AT 11:44AM

FAYE W. MITCHELL, CLERK
RECORDED BY: SWM

98014?
BARNETT E REEVES III          KASOTA
VERI                          VOLT 2013-NPL1-PRIV

BK 0 2 3 3 PG 4 8 3

9233
0483

Instrument Control Number

# Commonwealth of Virginia
## Land Record Instruments
## Cover Sheet - Form A

**[ILS VLR Cover Sheet Agent 1.0.66]**

T A X   C O R P
E X E M P T

Date of Instrument:   [9/30/2013   ]

Instrument Type:   [ASGMT   ]

Number of Parcels   [   1]

Number of Pages   [   2]

City [x] County [ ]   [City Of Chesapeake   ]   (Box for Deed Stamp Only)

### First and Second Grantors

| Last Name | First Name | Middle Name or Initial | Suffix |
|---|---|---|---|
| [Household Realty Corpo ] [ | ] [ | ] [ | ] [ ] |
| [Reeves   ] [Barnett | ] [E | ] [III | ] |

### First and Second Grantees

| Last Name | First Name | Middle Name or Initial | Suffix |
|---|---|---|---|
| [Volt Asset Holdings Trus ] [ | ] [ | ] [ | ] |
| [   ] [ | ] [ | ] [ | ] |

Grantee Address   (Name)   [Volt Asset Holdings Trust XVI   ]
   (Address 1)   [13801 Wireless Way   ]
   (Address 2)   [   ]
   (City, State, Zip)   [Oklahoma City   ] [OK] [73134   ]

Consideration [0.00   ] Existing Debt [0.00   ] Assumption Balance [0.00   ]

Prior Instr. Recorded at: City [x] County [ ]   [City Of Chesapeake   ] Percent. in this Juris.   [   100]

Book   [5379   ]   Page   [848   ]   Instr. No   [028069   ]

Parcel Identification No (PIN)   [   ]

Tax Map Num.   (if different than PIN)   [   ]

Short Property Description   [Lot 45, Camelot, Section 9 - Phase II   ]
   [   ]

Current Property Address  (Address 1)   [1019 Keltic Circle   ]
   (Address 2)   [   ]
   (City, State, Zip)   [Chesapeake   ] [VA  ] [23323   ]

Instrument Prepared by   [T.D. Service Company   ]
Recording Paid for by   [T.D. Service Company   ]
Return Recording to   (Name)   [T.D. Service Company   ]
   (Address 1)   [4000 W. Metropolitan Drive   ]
   (Address 2)   [Suite 400   ]
   (City, State, Zip)   [Orange   ] [CA ] [92868   ]

Customer Case ID   [   ] [   ] [   ]

RECEIVED
FOR RECORDING ONLY

2013 OCT -7 PM 2: 31

Cover Sheet Page # 1 of 1   CHESAPEAKE CIRCUIT COURT
FAYE W. MITCHELL, CLERK

When Recorded Return to:
T.D. Service Company
4000 W. Metropolitan Dr., Suite 400
Orange, CA 92868
RECORDING REQUESTED BY AND
WHEN RECORDED RETURN TO:
CALIBER HOME LOANS Inc.
13801 Wireless Way
Oklahoma City, OK 73134

Prepared By:     Hailey Woosley

Loan Number:

MERS Min:

Parcel ID::

Space Above This Line For Recorder's Use

## ASSIGNMENT OF MORTGAGE/DEED OF TRUST

FOR VALUE RECEIVED, the undersigned **HOUSEHOLD REALTY CORPORATION** whose address is **636 GRAND REGENCY BLVD BRANDON, FL 33510**, hereby grants, assigns and transfers to **VOLT ASSET HOLDINGS TRUST XVI** whose address is **13801 WIRELESS WAY, OKLAHOMA CITY, OK 73134** all beneficial interest under that certain mortgage/Deed of Trust/Security Deed dated **01/23/2004** executed by **BARNETT E REEVES III** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR INTERVALE MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS** in the amount of **$168,000.00** and recorded on **4/16/2004** as Instrument # **028069**, in Book/Volume or Liber No. **5379** , Page/folio **848** of Official Records in the County Recorder's office of **CHESAPEAKE CITY** County, VA, describing land herein as: **'SEE ATTACHED 'EXHIBIT A'**

Property Address:     **1019 KELTIC CIRCLE, CHESAPEAKE VA 23323**

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said mortgage/Deed of Trust/Security Deed.

Dated this **5th** day of **August** of **2013**

HOUSEHOLD REALTY CORPORATION, BY CALIBER HOME LOANS, INC., AS ATTORNEY IN FACT

Witness #1     **Kerry Brashears**

Witness #2     **Brandi Coulter**

County of Oklahoma )
State of Oklahoma )

By:     **Roy Lacey**

Title:     **Authorized Signatory**

On **August 5, 2013** before me, **Dannielle Ewald**, a Notary Public in and for Oklahoma County, in the State of Oklahoma, personally appeared, **Roy Lacey**, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand official seal,

Notary Name:     **Dannielle Ewald**

My Commission Expires:     1/7/2015

9233
0485

EXHIBIT A

Lot 45, CAMELOT, SECTION 9 – PHASE II, as the same is duly dedicated, platted and recorded in Map Book 142, at Pages 4, 4A and 4B among the Land Records of the City of Chesapeake, Virginia.

INSTRUMENT #130034744
RECORDED IN THE CLERK'S OFFICE OF
CHESAPEAKE ON
OCTOBER 8, 2013 AT 12:56PM

FAYE W. MITCHELL, CLERK
RECORDED BY: RCH

# VIRGINIA LAND RECORD COVER SHEET
## FORM A – COVER SHEET CONTENT

9634
1457

| | |
|---|---|
| Instrument Date: | 4/14/2014 |
| Instrument Type: | ASGMT |
| Number of Parcels: 1 | Number of Pages: 3 |
| [X] City [ ] County | |
| | CHESAPEAKE |

| | |
|---|---|
| TAX EXEMPT? | VIRGINIA/FEDERAL LAW |
| [ ] Grantor: | |
| [ ] Grantee: | |
| Consideration: | $0.00 |
| Existing Debt: | $0.00 |
| Actual Value/Assumed: | $0.00 |

*PRIOR INSTRUMENT UNDER § 58.1-803(D):*

| | |
|---|---|
| Original Principal: | $0.00 |
| Fair Market Value Increase: | $0.00 |
| Original Book Number: | Original Page Number: | Original Instrument Number: |

Prior Recording At: [X] City [ ] County

Percentage In This Jurisdiction:   100%

RECORDED IN
CITY OF CHESAPEAKE, VA
FAYE W. MITCHELL
CLERK OF CIRCUIT COURT
FILED        Apr 20, 2016
AT           03:55 pm
BOOK         09634
START PAGE   1457
END PAGE     1461
INSTRUMENT # 09945

TCC

*(Area Above Reserved For Deed Stamp Only)*

## BUSINESS / NAME

| | | |
|---|---|---|
| 1 | [X] Grantor: | VOLT ASSET HOLDING TRUST |
| 2 | [ ] Grantor: | MCMULLEN, C GRICE JR, TR |
| 1 | [X] Grantee: | US BANK TRUST NATIONAL ASSOCIATION |
| 2 | [X] Grantee: | TOWD POINT MASTER FUNDING TRUST 2014-07 |

GRANTEE ADDRESS
Name: US BANK TRUST NATIONAL ASSOCIATION

| | |
|---|---|
| Address: | |
| City: | State: VA   Zip Code: |
| Book Number: 5379 | Page Number: 848   Instrument Number: |
| Parcel Identification Number (PIN): ▮▮▮▮ | Tax Map Number: ▮▮▮▮ |
| Short Property Description: | LOT ~~43, SEC 9, PHASE II~~ |
| | CAMELOT |

Current Property Address

| | |
|---|---|
| City: CHESAPEAKE | State: VA   Zip Code: 23323 |
| Instrument Prepared By: SHAPIRO & BROWN | Recording Paid By: SHAPIRO & BROWN |
| Recording Returned To: SHAPIRO & BROWN | |
| Address: 10021 BALLS FORD ROAD   SUITE 200 | |
| City: MANASSAS | State: VA   Zip Code: 20109 |

CHESAPEAKE CIRCUIT COURT
FAYE W. MITCHELL.CLERK
2016 APR 20  AM 11: 46
RECEIVED
FOR RECORDING ONLY

FORM CC-1570  Rev: 7/15          Page 1 of 2          Cover Sheet A

Copyright © 2014 Office of the Executive Secretary, Supreme Court of Virginia. All rights reserved.

# 9634 VIRGINIA LAND RECORD COVER SHEET
# 1458 FORM B – ADDITIONAL GRANTORS/GRANTEES

**Instrument Date:** _____ 4/14/2014 _____

**Instrument Type:** _____ ASGMT _____

**Number of Parcels:** ___ 1 _____   **Number of Pages:** ___ 3 ___

[X] City [ ] County
............................ CHESAPEAKE ........................

*(Area Above Reserved For Deed Stamp Only)*

**GRANTOR BUSINESS / NAME**

__3__ [ ] **Grantor:** REEVES, BARNETT E III

_____ [ ] **Grantor:**

_____ [ ] **Grantor:**

_____ [ ] **Grantor:**

_____ [ ] **Grantor:**

_____ [ ] **Grantor:**

_____ [ ] **Grantor:**

_____ [ ] **Grantor:**

**GRANTEE BUSINESS / NAME**

_____ [ ] **Grantee:**

_____ [ ] **Grantee:**

_____ [ ] **Grantee:**

_____ [ ] **Grantee:**

_____ [ ] **Grantee:**

_____ [ ] **Grantee:**

_____ [ ] **Grantee:**

_____ [ ] **Grantee:**

Copyright © 2014 Office of the Executive Secretary, Supreme Court of Virginia. All rights reserved.

RECORDING REQUESTED BY AND WHEN RECORDED RETURN TO:

When recorded return to :
Richmond Monroe Group
82 Jim Linegar LN
Branson West, MO 65737

Space Above This Line For Recorder's Use

| Prepared By: | **Wanjiku Kingara** | Loan Number: |
| MERS Min: | | Parcel ID: |
| Caliber Document ID | | |

## ASSIGNMENT OF MORTGAGE/DEED OF TRUST

FOR VALUE RECEIVED, the undersigned **VOLT ASSET HOLDINGS TRUST XVI** whose address is **13801 WIRELESS WAY, OKLAHOMA CITY, OK** 73134, hereby grants, assigns and transfers to **See Attached Exhibit ° /ᐧ °** whose address is _____ all beneficial interest under that certain Deed of Trust dated **01/23/2004** executed by **BARNETT E REEVES III** to **C. GRICE MCMULLAN, JR. AS TRUSTEE FOR THE BENEFIT OF MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR INTERVALE MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS** in the amount of **$168,000.00** and recorded on **4/16/2004** as Instrument # **028069**, in Book/Volume or Liber No. **5379** , Page/folio **848** of Official Records in the County Recorder's office of **CHESAPEAKE CITY** County, **VA**, describing land herein as: '**SEE ATTACHED 'EXHIBIT A'**

Property Address: **1019 KELTIC CIRCLE, CHESAPEAKE VA 23323**

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated this 13th day of **May of 2014**

Witness #1     **Clifford Bristow**

Witness #2     **Wanjiku Kingara**

County of Oklahoma )
State of Oklahoma )

**VOLT ASSET HOLDINGS TRUST XVI, BY ITS TRUSTEE U.S. BANK TRUST, N.A., THROUGH CALIBER HOME LOANS, INC. AS ATTORNEY IN FACT FOR THE TRUSTEE**

By:     **Mindi Hernandez**
Title:     **Authorized Signatory**

On **May 13, 2014** before me, **Dannielle Ewald**, a Notary Public in and for Oklahoma County, in the State of Oklahoma, personally appeared, **Mindi Hernandez**, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Notary Name:     **Dannielle Ewald**

My Commission Expires:     **1/7/2015**

DANNIELLE EWALD
NOTARY
# 11000171
EXP. 01/07/15
PUBLIC
STATE OF OKLAHOMA

EXHIBIT A

Lot 45, CAMELOT, SECTION 9 – PHASE II, as the same is duly dedicated, platted and recorded in Map Book 142, at Pages 4, 4A and 4B among the Land Records of the City of Chesapeake, Virginia.

**EXHIBIT B**

Assignee: U.S. Bank Trust National Association, as Trustee for TOWD POINT MASTER FUNDING
TRUST 2014-07

C/O Select Portfolio Servicing, Inc.
3217 S. Decker Lake Drive
Salt Lake City, UT 84119

INSTRUMENT # 160009945
RECORDED IN THE CLERK'S OFFICE OF
CHESAPEAKE ON
APRIL 20, 2016 AT 03:55PM

FAYE W. MITCHELL, CLERK
RECORDED BY: TCC

# VIRGINIA LAND RECORD COVER SHEET
## FORM A – COVER SHEET CONTENT

**Instrument Date:** 10/23/2017
**Instrument Type:** ASGMT
**Number of Parcels:** 1    **Number of Pages:** 3
[X] City [ ] County

CHESAPEAKE

**TAX EXEMPT?**         VIRGINIA/FEDERAL LAW
[ ] Grantor:
[ ] Grantee:
**Consideration:** $0.00
**Existing Debt:** $0.00
**Actual Value/Assumed:** $0.00
*PRIOR INSTRUMENT UNDER § 58.1-803(D):*
**Original Principal:** $0.00
**Fair Market Value Increase:** $0.00

**Original Book Number:**    **Original Page Number:**    **Original Instrument Number:**

**Prior Recording At:** [ ] City [ ] County

**Percentage In This Jurisdiction:** 100%

```
RECORDED IN
CITY OF CHESAPEAKE, VA
ALAN P. KRASNOFF
CLERK OF CIRCUIT COURT
FILED          Nov 21, 2017
AT                  01:42 pm
BOOK            09858
START PAGE       0439
END PAGE         0443
INSTRUMENT #    32438

             GJB
```

*(Area Above Reserved For Deed Stamp Only)*

### BUSINESS / NAME
1   [X] **Grantor:** U.S BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE
2   [X] **Grantor:** TOWD POINT MASTER FUNDING TRUST 2014-07
1   [X] **Grantee:** TOWD POINT MASTER FUNDING TRUST 2017-NP1
    [ ] **Grantee:**

**GRANTEE ADDRESS**
**Name:** TOWD POINT MASTER FUNDING TRUST 2017-NP1
**Address:**
**City:**                                    **State:** VA   **Zip Code:**
**Book Number:**    **Page Number:**    **Instrument Number:**
**Parcel Identification Number (PIN):** ▮▮▮▮   **Tax Map Number:** ▮▮▮▮▮
**Short Property Description:**

**Current Property Address:**
**City:** CHESAPEAKE                          **State:** VA   **Zip Code:** 23323
**Instrument Prepared By:** U.S. BANK TRUST NATIONAL  **Recording Paid By:** WESTCOR LTIC INVESTOR SERVICES
**Recording Returned To:** WESTCOR LTIC INVESTOR SERVICES
**Address:** 600 WEST GERMANTOWN PIKE   SUITE 450
**City:** PLYMOUTH MEETING                    **State:** PA   **Zip Code:** 19462

CHESAPEAKE CIRCUIT COURT
2017 NOV 21 AM 11:55
RECEIVED FOR RECORDING ONLY

FORM CC-1570  Rev: 7/15                  Page  1  of 2                        Cover Sheet A

Copyright © 2014 Office of the Executive Secretary, Supreme Court of Virginia. All rights reserved.

VIRGINIA LAND RECORD COVER SHEET
FORM B – ADDITIONAL GRANTORS/GRANTEES

Instrument Date: _____10/23/2017_____

Instrument Type: _____ASGMT_____

Number of Parcels: ___1___     Number of Pages: ___3___

[X] City [ ] County
_____CHESAPEAKE_____

GRANTOR BUSINESS / NAME                          *(Area Above Reserved For Deed Stamp Only)*

| ...3... | [ ] Grantor: | REEVES, BARNETT E III |
| ........ | [ ] Grantor: | |
| ........ | [ ] Grantor: | |
| ........ | [ ] Grantor: | |
| ........ | [ ] Grantor: | |
| ........ | [ ] Grantor: | |
| ........ | [ ] Grantor: | |
| ........ | [ ] Grantor: | |

GRANTEE BUSINESS / NAME

| ........ | [ ] Grantee: | |
| ........ | [ ] Grantee: | |
| ........ | [ ] Grantee: | |
| ........ | [ ] Grantee: | |
| ........ | [ ] Grantee: | |
| ........ | [ ] Grantee: | |
| ........ | [ ] Grantee: | |
| ........ | [ ] Grantee: | |

FORM CC-1570  Rev: 10/14                 Page  2  of  2                         Cover Sheet B

Copyright © 2014 Office of the Executive Secretary, Supreme Court of Virginia. All rights reserved.

**PREPARED BY:**
U.S. BANK TRUST NATIONAL
ASSOCIATION, AS TRUSTEE FOR TOWD
POINT MASTER FUNDING TRUST 2014-07
C/O FirstKey Mortgage, LLC, 900 Third Avenue,
5th Floor, New York, NY 10022
**WHEN RECORDED RETURN TO:**
Westcor Land Title Insurance Co
600 W Germantown Ave, Suite 450
Plymouth Meeting, PA 19462

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned, **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE FOR TOWD POINT MASTER FUNDING TRUST 2014-07**, located at C/O FirstKey Mortgage, LLC, 900 Third Avenue, 5th Floor, New York, NY 10022, ("ASSIGNOR/GRANTOR"), hereby grants, conveys, assigns to: **TOWD POINT MASTER FUNDING TRUST 2017-NP1**, located at: C/O FirstKey Mortgage, LLC, 900 Third Avenue, 5th Floor, New York, NY 10022, ("ASSIGNEE/GRANTEE"), all beneficial interest under that certain **DEED OF TRUST**, dated **01/23/2004** and executed by **BARNETT E REEVES III**, borrower(s) to: C. GRICE MCMULLAN, JR. as original trustee and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR INTERVALE MORTGAGE CORPORATION**, as original lender, and certain instrument recorded 04/16/2004, in **Book 5379, Page 848, Instrument 28069**, in the Official Records of **CHESAPEAKE** County, the State of **Virginia**, given to secure a certain Promissory Note in the amount of **$168,000.00** covering the property located at **1019 KELTIC CIRCLE, CHESAPEAKE, VA 23323**.
<u>Legal Description:</u>
See Exhibit A, Attached.

TOGETHER with the note or notes therein described and secured thereby, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Mortgage including the right to have reconveyed, in whole or in part, the real property described therein.

CHESAPEAKE CIRCUIT COURT
2017 NOV ★ AM 11: 52
RECEIVED
FOR RECORDING ONLY

Dated: October _____23_____, 2017

ASSIGNOR: U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE FOR TOWD POINT MASTER FUNDING TRUST 2014-07

BY: FirstKey Mortgage, LLC, A Florida Limited Liability Company, its attorney-in-fact

By: _____

Name: Craig Eckes

Title: Authorized Signatory

Power of Attorney Recorded in Westchester County, NY in

Control Number ████████████

State of: NEW YORK
County of: NEW YORK

Before me, __**Maura C. Toglia**__, duly commissioned Notary Public, on this day personally appeared **Craig Eckes, Authorized Signatory of FirstKey Mortgage, LLC, A Florida Limited Liability Company, attorney-in-fact for U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE FOR TOWD POINT MASTER FUNDING TRUST 2014-07**, known to me (or proved to me on the oath of _____ or through _____) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed in his/her authorized capacity.

Given under my hand and seal of office this __23__ day of October, 2017.

_____
Notary Public's Signature

Printed Name: _____**MAURA C. TOGLIA**_____

Notary Public, State of New York
My Commission Expires: _____Lic. #01TO6044869_____
Qualified in Westchester County
My Commission Expires July 17, 20__/8

Property Address: 1019 KELTIC CIRCLE, CHESAPEAKE, VA 23323

## Exhibit A: Legal Description

THE FOLLOWING DESCRIBED PROPERTY SITUATED IN THE COUNTY OF CHESAPEAKE, STATE OF
VIRGINIA: LOT 45 CAMELOT SECTION 9 PHASE 11 MAP BOOK 142 PAGES 4, 4A-4B IN THE CITY OF
CHESAPEAKE IN THE COUNTY OF CHESAPEAKE IN THE COUNTY OF CHESAPEAKE CITY STATE OF
VIRGINIA

INSTRUMENT # 170032438
RECORDED CHESAPEAKE CIRCUIT COURT CLERK'S OFFICE
Nov 21, 2017   AT  01:42 pm
ALAN P. KRASNOFF, CLERK by GJB

BOOK 09858   PAGE 0439 - 00443

## VIRGINIA LAND RECORD COVER SHEET
## FORM A – COVER SHEET CONTENT

**Instrument Date:** 10/25/2017
**Instrument Type:** ASGMT
**Number of Parcels:** 1      **Number of Pages:** 3
[X] City [ ] County
CHESAPEAKE

**TAX EXEMPT?**      **VIRGINIA/FEDERAL LAW**
[ ] Grantor:
[ ] Grantee:
**Consideration:** $0.00
**Existing Debt:** $0.00
**Actual Value/Assumed:** $0.00
*PRIOR INSTRUMENT UNDER § 58.1-803(d):*
**Original Principal:** $0.00
**Fair Market Value Increase:** $0.00                *(Area Above Reserved For Deed Stamp Only)*

**Original Book Number:**      **Original Page Number:**      **Original Instrument Number:**

**Prior Recording At:** [ ] City [ ] County

**Percentage In This Jurisdiction:** 100%

**BUSINESS / NAME**
1    [ ] Grantor: REEVES, BARNETT E III
2    [X] Grantor: TOWD POINT MASTER FUNDING TRUST 2017-NP1
1    [ ] Grantee: MTGLQ INVESTORS, LP, 5338957_516741_AOM TX TX
     [ ] Grantee:
**GRANTEE ADDRESS**
**Name:** AOM TX MTGLQ INVESTORS, LP TX
**Address:** 6011 CONNECTION DRIVE
**City:** IRVING                                   **State:** VA    **Zip Code:** 75039
**Book Number:**      **Page Number:**      **Instrument Number:**
**Parcel Identification Number (PIN):**        **Tax Map Number:**
**Short Property Description:**

**Current Property Address**
**City:** CHESAPEAKE                          **State:** VA    **Zip Code:** 23323
**Instrument Prepared By:** TOWD POINT MASTER FUNDI  **Recording Paid By:** MERIDIAN ASSET SERVICES, LLC
**Recording Returned To:** MERIDIAN ASSET SERVICES.
**Address:** 3201 34TH STREET SOUTH, STE. 3
**City:** ST. PETERSBURG                      **State:** FL    **Zip Code:** 33711

FORM CC-1570  Rev: 7/15                Page  1  of  1                          Cover Sheet A

Copyright © 2014 Office of the Executive Secretary, Supreme Court of Virginia. All rights reserved.

**PREPARED BY:**
Towd Point Master Funding Trust 2017-NP1
C/O FirstKey Mortgage, LLC, 900 Third Avenue,
5th Floor, New York, NY 10028
**WHEN RECORDED RETURN TO:**
Westcor Land Title Insurance Co
600 W Germantown Ave, Suite 450
Plymouth Meeting, PA 19462



## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned, **Towd Point Master Funding Trust 2017-NP1**, located at C/O
FirstKey Mortgage, LLC, 900 Third Avenue, 5th Floor, New York, NY 10028, ("ASSIGNOR/GRANTOR"),
hereby grants, conveys, assigns to: **MTGLQ INVESTORS, L.P.**, located at: 6011 Connection Drive, Irving, TX
75039, ("ASSIGNEE/GRANTEE"), all beneficial interest under that certain **DEED OF TRUST**, dated **01/23/2004**
and executed by **BARNETT E REEVES III**, borrower(s) to: C. GRICE MCMULLAN, JR. as original trustee and
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR INTERVALE
MORTGAGE CORPORATION**, as original lender, and certain instrument recorded **04/16/2004**, in **Book 5379,
Page 848, Instrument 28069**, in the Official Records of **CHESAPEAKE** County, the State of **Virginia**, given to
secure a certain Promissory Note in the amount of **$168,000.00** covering the property located at **1019 KELTIC
CIRCLE, CHESAPEAKE, VA 23323**.
**Legal Description:**
See Exhibit A, Attached.

TOGETHER with the note or notes therein described and secured thereby, the money due and to become due
thereon, with interest, and all rights accrued or to accrue under said Mortgage including the right to have
reconveyed, in whole or in part, the real property described therein.

Dated: October ___25___, 2017

ASSIGNOR: Towd Point Master Funding Trust 2017-NP1

BY: FirstKey Mortgage, LLC, A Florida Limited Liability
Company, Not In Its Individual Capacity But Solely As
Administrator

By: _____

Name:  William Walenczyk

Title:  Authorized Signatory

State of: NEW YORK

County of: NEW YORK

Before me, ___Maura C. Toglia___, duly commissioned Notary Public, on this day personally appeared
William Walenczyk, Authorized Signatory of FirstKey Mortgage, LLC, A Florida Limited Liability
Company, Not In Its Individual Capacity But Solely As Administrator of Towd Point Master Funding Trust
2017-NP1, known to me (or proved to me on the oath of _____ or through _____) to be the
person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the
same for the purposes and consideration therein expressed in his/her authorized capacity.

Given under my hand and seal of office this _25_ day of October, 2017.

_____
Notary Public's Signature

Printed Name: ___MAURA C. TOGLIA___
Notary Public, State of New York
Lic. #01TO6044869
My Commission Expires: ___Qualified in Westchester County___
My Commission Expires July 17, 20__

Property Address: 1019 KELTIC CIRCLE, CHESAPEAKE, VA 23323

## Exhibit A: Legal Description

THE FOLLOWING DESCRIBED PROPERTY SITUATED IN THE COUNTY OF CHESAPEAKE, STATE OF
VIRGINIA: LOT 45 CAMELOT SECTION 9 PHASE I I MAP BOOK 142 PAGES 4, 4A-4B IN THE CITY OF
CHESAPEAKE IN THE COUNTY OF CHESAPEAKE IN THE COUNTY OF CHESAPEAKE CITY STATE OF
VIRGINIA

BK009395 PG-1981

INSTRUMENT # 180007619
E-RECORDED IN THE CLERK'S OFFICE OF
CHESAPEAKE ON
MARCH 27, 2018 AT 01:20PM

ALAN P. KRASNOFF, CLERK
RECORDED BY: RCH

After Recording Return To:
**Rushmore Loan Management Services LLC**
**15480 Laguna Canyon Road**
**Irvine, California 92618**

This Document Prepared By:
**Srdjan Njego**
**Rushmore Loan Management Services LLC**
**15480 Laguna Canyon Road**
**Irvine, California 92618**

Parcel ID Number ███████████
_____ [Space Above This Line For Recording Data] _____
Certified Original Loan Amount: **$168,000.00**

## LOAN MODIFICATION AGREEMENT
### Tax Exempt per Virginia State Code 58.1-809

        This Loan Modification Agreement ("Agreement"), made this **31st** day of **January, 2018**, between **BARNETT E REEVES III** ("Borrower") and **Owner, by and through Rushmore Loan Management Services LLC, as current servicer and agent, whose address is 15480 Laguna Canyon Road, Irvine, California 92618** ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated **January 23, 2004** and recorded in Book/Liber **5379**, Page **848**, of the Official Records of **CHESAPEAKE CITY County, VA** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at
**1019 KELTIC CIRCLE, CHESAPEAKE, VA 23323**,
(Property Address)
the real property described being set forth as follows:

## AS SET FORTH IN THE DEED OF TRUST

        In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.   As of **January 31, 2018**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$204,786.16**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.   Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **3.875%** from **December 01, 2017**, and Borrower promises to pay monthly payments of principal and interest in the amount of U.S. **$1,107.43** beginning on the **1st** day of **January, 2018**. If on **June 1, 2041** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   (b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands and agrees that:

   (a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   (b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

   (c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

   (d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

████████████████████████████

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f) Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging [ ].

6. Notwithstanding anything to the contrary contained in this Agreement, if a discharge has been granted, Borrower and Lender acknowledge the effect of a discharge in bankruptcy that has been granted to Borrower prior to the execution of this Agreement and that Lender may not pursue Borrower for personal liability. However, Borrower acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances. The parties agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of Borrower's default thereunder. Nothing in this Agreement shall be construed to be an attempt to collect against Borrower personally or an attempt to revive personal liability.

7. This Agreement modifies an obligation secured by an existing security instrument recorded in CHESAPEAKE CITY County, VA, upon which all recordation taxes have been paid. As of the date of this agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $158,127.26. The principal balance secured by the existing security instrument as a result of this Agreement is $204,786.16, which amount represents the unpaid principal balance of this original obligation.

In Witness Whereof, the Lender and I have executed this Agreement.

*Barnett E. Reeves III* _____ (Seal)

**BARNETT E REEVES III**  -Borrower

*Virginia* _____ [Space Below This Line For Acknowledgments] _____

State of Virginia

County of _Chesapeake._____

The foregoing instrument was acknowledged before me, this _12th_ day of _February_, _2018_.

by _Barnett Reeves 3rd_ _____

_____

_____

(Signature of person taking acknowledgment)

_Notary Public_

(Title or rank)

_7665198_

(Serial number, If any)

My commission expires the _31st_ day of _December_, _2019_

**Rushmore Loan Management Services LLC**

By: _____ (Seal) - Lender

Name: _____Karen M. Mastro_____

Title: _____Senior Vice President_____

_____2-22-19_____

Date of Lender's Signature

_____ [Space Below This Line For Acknowledgments] _____

State of _____

County of _____

The foregoing instrument was acknowledged before me on
_____

by _____, the _____ of

_____

.

_____

(Signature of person taking acknowledgment)

_____

(Title or rank)

_____

(Serial number, if any)

My commission expires the _____day of _____, _____

## ERRORS AND OMISSIONS/COMPLIANCE AGREEMENT

Loan Number ▮▮▮▮▮▮▮▮

FHA/VA Case Number:

Borrower(s):    **BARNETT E REEVES III**

Property Address:    **1019 KELTIC CIRCLE, CHESAPEAKE, VA 23323**

Servicer:    **Rushmore Loan Management Services LLC**

The undersigned Borrower(s) for and in consideration of the above-referenced Servicer modifying the terms of your mortgage loan, agrees that if requested by your Servicer, to fully cooperate and adjust for clerical errors, any or all loan modification documentation deemed necessary or desirable in the reasonable discretion of Servicer to enable Servicer to sell, convey, seek guaranty or market said loan to any entity, including but not limited to an investor, Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Government National Mortgage Association, Department of Housing and Urban Development, or the Department of Veterans Affairs, or any Municipal Bonding Authority.

I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial, and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

The undersigned Borrower(s) agree(s) to comply with all above noted requests by the above-referenced Servicer within 15 days from date of mailing of said requests. Borrower(s) agree(s) to assume all costs including, by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to comply with correction requests in the above noted time period.

The undersigned Borrower(s) do hereby so agree and covenant in order to assure that this loan modification documentation executed this date will conform and be acceptable in the marketplace in the instance of transfer, sale or conveyance by Servicer of its interest in and to said loan modification documentation, and to assure marketable title in the said Borrower(s).

DATED this **31st** day of **January, 2018**.

_Barnett E. Reeves III_ _____ (Seal)
**BARNETT E REEVES III**  -Borrower

Exhibit G

